# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ROBERT FLEENOR and CRYSTAL BARTZ, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> NCB MANAGEMENT SERVICES, INC., <br><br> Defendant. | Case No.: 18-cv-882 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Robert Fleenor is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Crystal Bartz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them debts allegedly incurred for personal, family, or household purposes.

6. Defendant NCB Management Services, Inc. ("NCB") is a foreign corporation with its principal place of business located at One Allied Drive, Trevose, PA 19053.

7. NCB is engaged in the business of collecting debts. NCB collects debts on behalf of third parties, and NCB also purchases and receives assignment of consumer debts that are in default at the time NCB acquires them.

8. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

9. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*,

2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017).

10. The primary purpose of NCB's business, and NCB's principal purpose, is the collection of consumer debts.

11. The homepage of NCB's website states:

> NCB Management Services, Inc. has been buying and collecting consumer debt on a large-scale and national basis for nearly 20 years. We are trusted by some of the most recognized banking brands in the country. Our operational capabilities and experience have made us very competitive in this vertical.

http://www.ncbi.com/.

12. The primary purpose of debt buying is debt collection. *See, e.g. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

13. When attempting to collect debts owed to itself or third-parties, NCB uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

14. Upon information and belief, NCB by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that NCB has filed well over 50 small claims lawsuits against Wisconsin consumers in 2018 as of the date of this Complaint. When NCB obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

3

15. NCB is a debt collector as defined in 15 U.S.C. § 1692a. *Barbato*, 2017 U.S. Dist. LEXIS 172984; *Tepper v. Amos Fin., LLC*, 2017 U.S. Dist. LEXIS 127697 *20-22.

## FACTS

### *Facts Related to Plaintiff Fleenor*

16. On or about August 15, 2017, NCB mailed a debt collection letter to Plaintiff Fleenor regarding an alleged debt owed to "World's Foremost Bank." A copy of this letter is attached to this Complaint as Exhibit A.

17. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, used only for personal, family, and household purposes.

18. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Fleenor inserted by computer.

19. Upon information and belief, Exhibit A is a form debt collection letter, used by NCB to attempt to collect alleged debts.

20. Exhibit A lists the balance of the alleged debt as $610.22.

21. Exhibit A also includes the following representation:

> This communication is from a debt collector. The purpose of this letter is to collect a debt. Any information obtained will be used for that purpose. As of the date of this letter, you owe $610.22. Because of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you.
>
> Please see reverse side for important information.

22. Exhibit A does not reference any other amount due.

23. Upon information and belief, the alleged debt referenced in Exhibit A had not yet been accelerated at the time Exhibit A was sent to Plaintiff Fleenor.

4

24. On or about July 7, 2017, Plaintiff Fleenor received a billing statement for his account with World's Foremost Bank. A copy of this statement is attached to the Complaint as Exhibit B.

25. Exhibit B shows a "New Balance" of $562.17, a "Minimum Payment Due" of $171.00, and a "Payment Due Date" of August 2, 2017.

26. Upon information and belief, the subsequent billing statement received by Plaintiff Fleenor, sent on or about August 7, 2017, showed his account with a "New Balance" of $610.22, the amount listed as the balance in Exhibit A, but still sought a "Minimum Payment Due" with a due date on or about September 2, 2018.

27. By listing only the total balance of Plaintiff Fleenor's account, Exhibit A falsely represents that the alleged debt had been accelerated.

28. By listing only the total balance of Plaintiff Fleenor's account prior to the acceleration of his alleged debt without listing the amount currently due, Exhibit A is false, deceptive, and misleading as to the amount of the debt currently due to the creditor. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'").

29. Alternatively, if Plaintiff Fleenor's account actually had been accelerated, the representation included in Exhibit A that "[b]ecause of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be greater" is false, deceptive, and misleading.

30. Upon information and belief, World's Foremost Bank had no intention to collect post-charge-off interest on Plaintiff Fleenor's account. *See, e.g.*, *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 521 (E.D. Mich. Aug. 7, 2013), *vacated by McDonald v. Asset Acceptance*

5

*LLC*, 2016 U.S. Dist. LEXIS 102182 (E.D. Mich. June 23, 2016) ("Asset produced credit card account purchase agreements with other creditors that do not charge post charge-off interest. These include . . . World's Foremost Bank of Nebraska.").

31. Upon information and belief, neither NCB, nor World's Foremost Bank, could or intended to collect a late fee. The balance of Fleenor's account had already been accelerated. *See, e.g., Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) ("If for whatever reason, the Rizzos did not want to pay the late fees, they were free to pay the loan as accelerated. Such a payment would nullify any obligation to pay post-acceleration late fees.").

32. Even if the debt was, in fact, bearing interest, the unsophisticated consumer would understand the statement that the balance may increase as a result of "other charges" to mean that the creditor, or the debt collector, could impose late fees or collection fees in addition to the interest that was actually accruing.

33. Also upon information and belief, neither NCB, nor World's Foremost Bank, could or intended to collect a collection fee. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

34. Because, upon information and belief, neither the debt collector nor creditor could or would impose any additional "other charges" under Wisconsin law, the statement that the account may "periodically increase" as a result of these charges is a material misrepresentation. *See Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362, 367 (7th Cir. 2018) (statement

6

that account was subject to "interest, late fees, and other charges" when the account was subject to interest but not late fees or other charges was a material false and misleading statement); *Ruge v. Delta Outsource Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *9 (N.D. Ill. Mar. 13, 2017) ("Merely deciding not to add interest to an account is one thing; holding out the possibility of charging interest when a debt collector knows that interest will not be added is another---it is a false statement.").

35. Lastly, Exhibit A also contains instructions for authorizing an electronic payment to NCB.

36. Exhibit A contains further instructions for cancelling such electronic payments. Specifically, Exhibit A states:

> **Right to Cancel.** You may cancel this authorization by calling us toll free at 855-819-8109, Monday through Friday, 8:00 am to 5:00 pm (EST), or write us at P.O. Box 1099, Langhorne, PA 19047, or by email at cancel.payment@ncbi.com, in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after you call. You may also contact your account-holding financial institution for instructions on how to stop payment of regular transfers from your account.

37. Exhibit A thus states that a consumer may cancel any electronic payment up to business days prior to the date the payment is scheduled to be made.

38. Exhibit A also states that "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call."

39. Exhibit A fails to explain, however, what happens with regard to the funds scheduled to be made through the electronic payment during the period of time intervening between a cancellation made via telephone and any subsequent written cancelation request.

40. Specifically, Exhibit A fails to explain whether such funds would be held in escrow or simply not transferred, and if not transferred, whether NCB reserves the right to transfer such funds should the consumer fail to submit the required written cancelation request.

7

41. Given the ambiguity of the representations contained in Exhibit A, the unsophisticated consumer may incorrectly assume that the funds subject to a scheduled electronic payment may be subject to any of the above mentioned possibilities.

42. Upon information and belief, if a consumer cancels an electronic payment via telephone but then fails to submit a written request, NCB would not actually transfer such funds to NCB's account despite such failure.

43. By stating "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call," Exhibit A is implicitly representing that it may transfer the funds if the consumer fails to submit a written request.

44. By stating "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call," NCB thus threatens to take an action that it does not actually intend to take.

45. Plaintiff Fleenor was confused and misled by Exhibit A.

46. The unsophisticated consumer would be confused and misled by Exhibit A.

*Facts related to Plaintiff Bartz*

47. On or about December 26, 2017, NCB mailed a debt collection letter to Plaintiff Bartz regarding an alleged debt owed to NCB, with an "Original Creditor" of "Rise Financial, LLC D/B/A Rise Credit." A copy of this letter is attached to this Complaint as Exhibit C.

48. Upon information and belief, the alleged debt referenced in Exhibit C was incurred as the result of a short-term consumer loan used only for personal, family, or household purposes.

49. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Bartz inserted by computer.

8

50. Upon information and belief, Exhibit C is a form debt collection letter, used by NCB to attempt to collect alleged debts.

51. Upon information and belief, Exhibit C was the first written communication NCB sent to Plaintiff Bartz regarding this alleged debt.

52. Exhibit C contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. This communication is from a debt collector. The purpose of this letter is to collect a debt. Any information obtained will be used for that purpose.

53. Exhibit C contains instructions for authorizing an electronic payment to NCB.

54. Exhibit C contains additional instructions for cancelling such electronic payments. Specifically, Exhibit C states:

> *Right to Cancel.* You may cancel this authorization by calling us toll free at 855-739-5300, Monday through Friday, 8:00 am to 5:00 pm (EST), or write us at P.O. Box 1099, Langhorne, PA 19047, or by email at cancel.payment@ncbi.com, in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after you call. You may also contact your account-holding financial institution for instructions on how to stop payment of regular transfers from your account.

55. Exhibit C thus states that a consumer may cancel any electronic payment up to business days prior to the date the payment is scheduled to be made.

56. Exhibit C also states that "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call."

9

57. Exhibit C fails to explain, however, what happens with regard to the funds scheduled to be made through the electronic payment during the period of time intervening between a cancellation made via telephone and any subsequent written cancelation request.

58. Specifically, Exhibit C fails to explain whether such funds would be held in escrow or simply not transferred, and if not transferred, whether NCB reserves the right to transfer such funds should the consumer fail to submit the required written cancelation request.

59. Given the ambiguity of the representations contained in Exhibit C, the unsophisticated consumer may incorrectly assume that the funds subject to a scheduled electronic payment may be subject to any of the above mentioned possibilities.

60. Upon information and belief, if a consumer cancels an electronic payment via telephone but then fails to submit a written request, NCB would not actually transfer such funds to NCB's account despite such failure.

61. By stating "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call," Exhibit C is implicitly representing that it may transfer the funds if the consumer fails to submit a written request.

62. By stating "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call," NCB thus threatens to take an action that it does not actually intend to take.

63. Several months after sending the initial letter, on or about March 2, 2018, NCB sent another debt collection letter to Plaintiff Bartz via e-mail regarding the same alleged debt. A copy of this letter is attached to this Complaint as Exhibit D.

64. Upon information and belief, Exhibit D is also a form letter, generated by computer, and with the information specific to Bartz inserted by computer.

65. Upon information and belief, Exhibit D is also form debt collection letter, used by NCB to attempt to collect alleged debts.

66. Exhibit D contains the same "Right to Cancel" information as provided by Exhibit C:

> *Right to Cancel.* You may cancel this authorization by calling us toll free at 855-739-5300, Monday through Friday, 8:00 am to 5:00 pm (EST), or write us at P.O. Box 1099, Langhorne, PA 19047, or by email at cancel.payment@ncbi.com, in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after you call. You may also contact your account-holding financial institution for instructions on how to stop payment of regular transfers from your account.

67. Plaintiff Bartz was confused and misled by Exhibit C and Exhibit D.

68. The unsophisticated consumer would be confused and misled by Exhibit C and Exhibit D.

## *The FDCPA*

69. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Patterson v. Howe*, 2018 U.S. Dist. LEXIS 54250, at *21-22 (S.D. Ind. Mar. 30, 2018) (collecting cases and concluding

11

that "this court and a legion of courts around the country have rejected post-*Spokeo* challenges in FDCPA cases."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 995 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

70. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

71. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

72. 15 U.S.C. § 1692e(2)(a) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

73. 15 U.S.C. § 1692e(5) specifically prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

74. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

## COUNT I – FDCPA

75. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Count I is brought on behalf of Plaintiff Fleenor.

77. By listing only the total balance of Plaintiff Fleenor's account prior to the acceleration of his alleged debt, Exhibit A is false, deceptive, and misleading as to the amount of the debt currently due to the creditor as well as the character, amount, and legal status of the alleged debt.

78. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), and 1692e(10).

## COUNT II - FDCPA

79. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80. Count II is brought on behalf of Plaintiff Fleenor and in the alternative to Count I.

81. By stating "[b]ecause of interest, late charges, and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be greater," Exhibit A falsely indicates that NCB or the creditor may impose such additional charges.

82. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), and 1692e(10).

## COUNT III - FDCPA

83. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. Count III is brought on behalf of both Plaintiffs.

85. By allowing a consumer to cancel an electronic payment by telephone but subsequently requiring a written cancellation after the scheduled date of such transfer, Exhibits A, C, & D are confusing and misleading as to the disposition of the funds originally scheduled for an electronic payment in the time intervening between the telephonic and written requests to cancel such payment.

86. By stating "[NCB] may also require you to put your request in writing and get it to us within 14 days after your call," Exhibits A, C, & D implicitly threaten to transfer such funds and thus threaten to take an action that NCB does not intend to be taken.

87. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## CLASS ALLEGATIONS

88. Plaintiff brings this action on behalf of two classes.

89. Class I consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) between June 11, 2017 and June 11, 2018, inclusive (e) that was not returned by the postal service.

90. Class I consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by <u>Exhibits A, C or D</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) between June 11, 2017 and June 11, 2018, inclusive (e) that was not returned by the postal service.

91. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

92. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA.

93. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

94. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

95. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

96. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 11, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com